# Richmond.

| 76 | 247 |
| 108 | 550 |

ETHERIDGE'S ADM'R AND ALS. v. PARKER AND WIFE AND ALS.

March 9, 1882.

1. MARRIED WOMEN—*Separate estate—Jus disponendi.*—Deed conveying property to separate use of wife gives her the absolute dominion over it of a *feme sole.* Of course, that property can be sold under deed of trust executed on it by her and her husband to pay their bond.

2. ASSIGNOR—ASSIGNEE—*Equities.*—Assignee of non-negotiable *chose* takes it subject to all debtors' equities against assignor existing at time or before notice of assignment, and based on *honest* transactions between him and assignor.

3. IDEM.—*Private agreement*, unknown to assignee, cannot be set up as defence to payment by one who lends to another his credit in the form of a note.

4. CASE HERE.—P and wife were indebted to L, who had in hand money belonging to E, which L desired to borrow. L told E he could lend it at large interest, well secured, and was authorized to do so. L got from P and wife their bond, secured by deed of trust on her separate estate, but had to give her his own *non*-negotiable note for same amount. Both P and wife knew this was to enable L to raise money. E, ignorant of the note given by L to Mrs. P, became assignee for full value of the bond and deed of trust of P and wife. No fraud was imputable to any of the parties.

HELD:

E is entitled to enforce the deed of trust for the payment of his debt, unaffected by any supposed equities between L and P and wife.

Appeal from decree of circuit court of Norfolk county, in suit of George D. Parker and Urbanna, his wife, *against* William Lamb, Frederick Wingfield, James J. Cole, John S. Stubbs, G. F. Edwards, and Theodore S. Garnett, Jr., administrator of Joseph H. Etheridge, deceased. Object of bill was to enjoin sale of real estate held for Mrs. Parker's

separate use, with power in her to dispose of it as if she were *sole*, and to cancel the debt, for which bonds and a deed of trust on said estate had been executed by Parker and wife, on three grounds—to wit: that the debt was usurious; that she had no authority to create such a charge on her separate estate; and that the bonds and deed of trust were improperly obtained from her. Circuit court decreed in favor of the plaintiffs, and the defendants, Etheridge's administrator and Lamb, obtained an appeal to this court. Opinion of court states the remaining facts.

*Baker & Son* and *White & Garnett*, for the appellants.

*Godwin & Crocker*, for the appellees.

BURKS, J., delivered the opinion of the court.

Though made a question by the pleadings in the court below, there cannot be a doubt here, either on principle or authority, that Mrs. Parker had full power to bind her separate estate by the bonds and deeds of trust executed by her. The deed of settlement under which she derives her estate gives her the absolute dominion of a *feme sole* over the property conveyed to her use. The draftsman of the instrument seems to have exerted himself, by the multiplication of terms and provisions, to enlarge her powers to the utmost and exclude every conceivable inference of intended restraint.

The questions raised below as to the bond for $900 (balance) ultimately assigned to Etheridge, and the deed of trust given to secure its payment, may also be laid out of view. The trust has been executed by decree, the debt paid, and no party is complaining here of that decree.

The assignments of error make it necessary to consider only the final decree of August 25, 1878, which relates ex-

clusively to the bond for $5,500 executed by Parker and wife to Lamb, and by him assigned to Etheridge, the deed of trust on Mrs. Parker's property to secure it, and the contemporaneous note of Lamb to Mrs. Parker.

The circuit court was of opinion that this bond and deed of trust were obtained from Mrs. Parker under circumstances as rendered it inequitable to enforce the deed or to hold her property liable for the payment of the bond, and such is the effect of the decree.

I cannot concur in this conclusion. The material facts, to be gathered from the record on this branch of the case, are these :

Lamb was president of the First National Bank of Norfolk, and at the same time engaged in business as a shipbroker or merchant. Etheridge, a planter or farmer, who resided in North Carolina, had a large sum of money on deposit, either in the bank or with Lamb individually (it is uncertain which, nor do I deem it very material). Lamb wrote to Etheridge sometime previous to July 19, 1870, advising him that he could make a loan of $5,500 of his money at 12 per cent. interest, with real estate security. Etheridge replied, giving him authority to make the loan on the terms mentioned. It is obvious from Lamb's answer to the bill, and, indeed, from the whole record, that his desire and purpose were to borrow the money, or to have the use of it himself, but he did not disclose that fact to Etheridge; at least, it does not appear from the record that he did. Parker and wife were largely indebted to him. He had advanced the greater part of the purchase money for the property which was settled to Mrs. Parker's use, the means for putting the buildings and improvements upon it, and supplies for support. On account of these advances in part, he had taken a lien by deed of trust for $5,000 on Mrs. Parker's property in June or July, 1869. This debt, though evidenced by bonds, payable to him

as guardian of Tunis, then belonged to him individually. Parker had served as adjutant in Colonel Lamb's regiment during the late war, and to him, as well as his wife, Lamb was warmly attached. Such is the evidence. The friendship between these men, in the opinion of a witness, was the strongest and most disinterested he ever knew to exist between one man and another. Hence the liberal advances, and hence, too, the reluctance of Lamb to enforce the existing lien on Mrs. Parker's property. He therefore proposed to Parker that if he and his wife would execute to him their bond for the $5,500, and secure it by a lien on Mrs. Parker's property, he would release the lien for the Tunis debt of $5,000, and also pay off the $900 before-mentioned, secured by a prior deed of trust. Parker assented to this, and so, it would seem, did his wife at first; for he at once procured and delivered the bond, but Mrs. Parker afterwards refused to execute the deed of trust. Why she refused does not appear. The request appears to have been reasonable, and the proposed arrangement just and not to her disadvantage, for her estate would have been relieved of a larger debt than the one substituted for it. As soon as the bond was delivered to Lamb—immediately, he says—he notified Etheridge of the fact by letter, and having implicit confidence that the contemplated arrangement would be carried out, he further informed him, he states, that the lien was or would be secured. There is some doubt as to when the bond was delivered by Lamb to Etheridge, but the weight of the proof is, I think, that it was not delivered until Etheridge came to Norfolk, in January, 1871—some three months after the deed was executed by Mrs. Parker. However that may be, Mrs. Parker having refused to execute the deed on the terms offered, Lamb testifies, and his statement is not contradicted, that Parker proposed that if he would give to Mrs. Parker his note for the same amount,

and of the same date with her bond already delivered, she would execute the deed. To this proposition Lamb acceded, as shown by his letter to Mrs. Parker of October 12, 1870, and the note and deed were accordingly executed at the same time.

It does not appear precisely when Etheridge turned over the money. The inference is that it was not done until the securities for the loan were perfected. It is not supposed that the money, even if already in the hands of Lamb as a depositary, would have been regarded or treated by him as his own until the deed of trust was executed and acknowledged by Mrs. Parker.

.At any rate, Etheridge parted with his money on faith of the securities proposed to be given, and the record leaves no room for doubt that Mrs. Parker knew, when she gave these securities, that they were to be transferred either to Etheridge or some other person for Lamb's benefit; in other words, that they were to be negotiated for Lamb's accommodation and use; that they were, in fact, devised by him as a means for raising money. Her husband had full information as to the particular person to whom they were to be transferred. If he was her agent, as the evidence tends to show, his knowledge was hers. If not her agent, or he did not communicate to her what he knew, Lamb's letter to her of September 29, 1870, informed her at least that the object was to raise money on the securities proposed to be given. This being so, if the purpose of the transaction finally consummated was that Lamb's note should be used as a set-off against the bond of herself and her husband and the trust deed in the hands of Etheridge or any other *bona fide* assignee for value, it can receive no countenance in a court of justice. It would be a deliberate fraud on Etheridge, who, it seems, had no knowledge whatever of the matter. It is wholly immaterial, in this view, whether Lamb was the agent of Ethe-

ridge or not.   It would be a new principle in our jurisprudence, if a third person, actively co-operating with an agent in defrauding his principal, could successfully invoke the aid of a court of conscience to protect him against the consequences of his iniquity.

It is admitted that the assignee of a non-negotiable *chose in action* takes it subject to all the equities of the debtor against the assignor existing at the date of the assignment, or which arise after the assignment and before the debtor has notice of it; and this is so though the assignee has taken the assignment for value, *bona fide*, and without notice of the equity.   This is the settled doctrine in England and in this country.   *Norton* v. *Rose*, 2 Wash. 233, is the leading case in this State.

But the rule applies only where the debtor has an *equity* to relief or a ground of defence based on *honest* transactions between himself and the assignor. 1 Parsons Con. (5th ed.), 227.   It was never designed as a shelter to fraud.

One who lends his credit to another in the form of a note, to be sold to raise funds, cannot, against the assignee of that note, set up any private agreement unknown to the assignee, as a defence to the payment of the note.   *Gano* v. *Finnell*, 13 B. Monroe, 390.   The same principle was reaffirmed by the court of appeals of Kentucky in *Barbaroux* v. *Barker*, 4 Met. 47.   Two persons, mutually indebted to each other, had executed each to the other his notes of hand for the full amounts of their respective indebtedness, with the understanding between them that the notes might be used to pay precedent debts, or for raising money by negotiation.   One of the payees assigned one of the notes, and failed.   In a suit by the assignee against the maker he pleaded a note of the same date, executed to him by the assignor, as a set-off; and it was held that the set-off could not be allowed.   See, also, Pollock on Principles of Contract, 209 (marg. p.).

The same principle would apply where the credit is lent in the form of a bond, instead of a non-negotiable note.

But, in my judgment, there is no occasion to impute fraud to any of the parties in the transaction now under consideration; and I am glad that it is so. The substance of the final arrangement, as it seems to me, was that Mrs. Parker, with a full knowledge of her rights and of the obligation she assumed, lent her credit or that of her estate to Lamb, as a means to raise money for his use, and took his note for her indemnity. This she might very well have done under the circumstances, as they then appeared. She had profited by his kindness and generosity for years. He had at that time "unlimited credit," and she incurred but little risk; for if she had the whole debt to pay, she and her husband would still be his debtors. And this solution of the transaction accords more nearly with the uncontradicted account given by Colonel Lamb in his deposition.

The result, if my opinion prevails, imposes no hardship upon Mrs. Parker. Colonel Lamb has released her estate from the lien for the Tunis debt, of undisputed validity, and little less in amount than the bond held by Etheridge's representative. The release was made the more effectually to secure the Etheridge debt. If she claims the benefit of the release, as it seems she does, it would not be a great stretch of equitable principles to require her to give an equivalent for the benefit taken by her but intended for another.

I am of opinion that the decree of the circuit court should be reversed and the case remanded. It appears that some interest has been paid on the debt. Credit should be given for that when the case gets back, and a decree rendered subjecting the trust property to the payment of the balance due.

Decree reversed.