*Staunton.*

GORDON, ASSIGNEE v. RIXEY, ASSIGNEE, AND ALS.

October 4, 1882.

1. LIENS—*Judgment—Vendors—Priorities—Case at bar.*—In 1867, on bond of M and B to P, assigned by P to R, the latter obtained judgment, which was docketed in 1869. In 1866 M granted his land to B, reserving lien for purchase money, and in 1870 assigned the purchase money bonds to G for value without notice of the judgment. In contest for priority between R, as judgment creditor, and G, as assignee of the vendor's lien and of the bonds thereby secured.

HELD :

The lien of the judgment hath priority.

2. IDEM—*Vendors—Charge only, not estate in re.*—Reserving lien for purchase money creates no property in the land. It passes as personalty. Assigning the debt carries the lien. It binds the land for the purchase money, excluding other claims.

3. IDEM—*Idem.*—Assignee of purchase money bonds, secured by vendor's lien, is assignee of a chose in action only and not such *purchaser* of the land for value as will be protected by Code 1873, ch. 182, § 8. He is entitled to the rights of his assignor, and no more.

4. IDEM.—*Judgment*, though undocketed, is good against subsequent creditors, with or without notice.

5. PURCHASER.—Claimant of the rights of a purchaser must aver and prove he gave a valuable consideration.

6. ASSIGNMENTS *of choses in action*, in Virginia, are not required to be recorded, and such recordation would not affect third persons with constructive notice.

7. ASSIGNOR—*Assignee—Recourse—Case here.*—In 1860 R sold land to P, who assigned him bonds in payment. In 1870 P sold the land, and R was asked to join in the conveyance, but declined, unless he could realize in cash $2,000. Then P gave R the $2,000, to hold until the bonds to that amount were collected, and R reassigned $2,000 of the bonds to P. The estate of the obligors proved insufficient to pay the bonds in full. In contest between R and P for preference as to the obligor's assets—

*d*

HELD :

    1. R hath preference, inasmuch as, having used due diligence to collect the bonds, he would have recourse over against his assignor, P. for any deficit.

    2. All the parties being before the court, R will not be turned around to an independent suit, but may have relief in this.

Appeal from decree of circuit court of Nelson county, in two suits consolidated and heard together, in first whereof John H. Rixey, assignee of Richard L. Patterson, was plaintiff, and W. P. Hall, T. L. Bondurant, A. J. Bondurant, A. Moseley, G. Moseley and R. L. Patterson were defendants; and in second whereof Douglass H. Gordon was plaintiff, and the plaintiff and the defendants in first suit, with the executors of T. M. Bondurant, deceased, were defendants.

In September, 1867, J. H. Rixey, as assignee of R. L. Patterson, recovered in circuit court of Buckingham, judgment for $8,493.80 against the said Hall, the said Bondurants, and the said Moseleys. This judgment was docketed in Nelson county in March, 1869. In October, 1866, A. Moseley, in writing, never recorded, sold A. J. Bondurant, for $40,000 in gold, his two estates, *" Fish Pond "* and *" Big Sycamore Island,"* in Nelson county; $5,000 cash and balance in twenty annual instalments. A due bill was given for the cash, and bonds executed for the credit payments, whereon it was endorsed that the vendor's lien was retained. Three days later Moseley conveyed this property to Bondurant by deed, reserving lien for the purchase money. This deed was recorded in Nelson county June 2d, 1868. Bondurant, by deed of even date with that to him, conveyed this property to T. L. Bondurant, in trust to secure the credit payments. This trust deed was not recorded in Nelson county until March 1st, 1871. In January, 1870, the due bill and twenty bonds were assigned by A. Moseley to Douglas H. Gordon, for value without notice to him of Rixey's judgment. Rixey's suit was to enforce the lien of his judgment against

those two tracts of land. Gordon's suit, which was in the nature of a cross-bill, was to assert his claim to priority as assignee of the vendor's lien for the purchase money of those two tracts over the judgment lien of Rixey.

The other facts are stated in the opinion of the court.

*James Pleasants* and *John D. Horseley,* for appellant.

*Irving & McKinney, Robert Whitehead* and *Camm Patteson,* for appellees.

STAPLES, J., delivered the opinion of the court.

The court has not been favored with an oral discussion in this case. It has, however, had the benefit of an able and exhaustive argument in printed briefs by counsel on both sides. The questions arising upon the record have received at our hands that careful consideration demanded as well by the amount in controversy as by the importance of the principles involved. The facts are few and simple, and in the main uncontroverted.

It is conceded that the appellee's judgment against Moseley and Bondurant, although recovered in September, 1867, was not docketed until the 5th of March, 1869. It is also conceded that the deed from Moseley to Bondurant, dated 15th October, 1866, was not admitted to record till June, 1868. It is not denied that the judgment constituted a lien on the land in the hands of Bondurant, who was a party to it, and had actual notice of its existence. It is further conceded that the bonds executed by Bondurant to Moseley for the purchase money of the land, were assigned by Moseley to the appellant, Douglas H. Gordon, in January, 1870, and that the latter had no actual notice of the appellee's judgment. It is, however, not conceded that the appellant paid valuable consideration for the bonds. On the contrary, in

the answer of the appellees this matter is put in issue, and proof is required of the consideration of the assignment, and of all the terms of the contract between appellant and Moseley. All the evidence we have on the subject is the affidavit of the appellant, agreed to be read as evidence, in which he states that " he paid value for the bonds."

This is clearly insufficient, for the rule seems to be well settled that a person claiming to be a purchaser must present his case with certainty. He must not only aver, he must prove that he gave a valuable consideration, what it was, when paid, or transferred. It must appear that the purchase money was *bona fide* and actually paid. Leading Cases in Equity, vol. 2, part 1, 99 and 100. I think, however, the high character of the parties forbid the idea of any fraud on their part; and in the view I take of the case, it may be assumed that a valuable consideration was paid for the bonds.

Another fact important to be stated is, that in the deed from Moseley to Bondurant a lien is reserved for the unpaid purchase money, and contemporary with it, a deed of trust was executed by Bondurant upon the property as further security for the debt.

That deed was, however, not recorded till March, 1871. The question arising upon this state of facts is, who has the preferable right to payment out of the land—the appellee, as a judgment creditor of Moseley, or the appellant, as assignee of the bonds? The appellant, as I understand, asserts no claim under the deed of trust, because that deed was never recorded until more than a year after the date of the assignment, and long after the lien of the judgment had attached. Every party to the deed of trust—grantor, trustee and creditor—was also a party to the judgment, and had actual notice of its existence. The deed of trust was, therefore, utterly void as to the appellees, and may be, and, indeed, has been thrown out of view in the discussion.

The contention of the appellant is, that under the regis-
try acts, purchasers are understood to be all persons who,
by contract, have acquired a direct interest in the subject,
whether by way of lien, as by mortgage or deed of trust, or by
absolute conveyance, in contradistinction to creditors whose
liens arise by act of law; that in this case the assignment
of the bonds to the appellant carried with it the vendor's
lien, and as this lien is secured by the deed from Moseley
to Bondurant, the appellant is to be treated as a purchaser
under that deed to the same extent as though the bonds
had been secured by deed of trust or mortgage, and as such
purchaser the appellant has priority over the judgment
which was not duly docketed.

The proposition of the learned counsel with respect to the
persons who are to be regarded as purchasers under the
registry acts, is taken from 2d Minor's Inst. page 876, and
is no doubt entirely correct.

The learned author does not, of course, mean to say that
every person holding a lien by contract on real estate is to
be considered a purchaser.  His statement is, that "he is a
purchaser who has acquired a *direct interest in the subject* by
way of lien, or by mortgage, or by deed of trust, or by abso-
lute conveyance."   It has been repeatedly held by this court
that creditors secured by deeds of trust are regarded in the
light of purchasers, and it is well settled that a mortgagee
is also a purchaser to the extent of his interest in the prem-
ises.    *Wickham & Goshorn* v. *Lewis, Martin & Co.,* 13 Gratt. 436 ;
*Conrad* v. *Atlantic Ins. Co.,* 1 Peters, 442.    And the reason is
that both the trust deed and the mortgage operate as con-
veyances of the estate, in the one case to the trustee, and in
the other to the mortgagee.

It may be that the appellant claims under the deed from
Moseley to Bondurant, not, however, as a purchaser of the
land embraced in that deed, or of any interest therein, but
as the mere assignee and purchaser of bonds given for the

purchase money, which, although secured by a lien on realty, do not of themselves constitute any part of such realty.

The learned counsel, in discussing another part of the case, have themselves furnished a very satisfactory exposition of the law bearing upon this point. They say "the deed from Moseley to Bondurant granted all of Moseley's interest in the land, and thereby completely divested his title. The vendor's lien, reserved on its face, was not an interest in real estate, but a lien only or charge upon real estate. The lien of a vendor before a conveyance may be an interest in real estate, but afterwards it is a mere charge. It is not a property in the thing—neither a *jus in re*, nor a *jus ad rem*, but only a charge on the thing."

These views of the learned counsel are, I think, correct, and are fully sustained by the authorities. Adams' Equity, page 128, note, and cases there cited. It is unnecessary to discuss here the rights and interests of a vendor before conveyance of the legal title. After such conveyance, the entire legal and beneficial ownership is vested in the purchaser. The implied lien of the vendor, as the law formerly stood, was the mere creation of the equity courts— according to some authorities, having its origin in the presumed intention of the parties; according to others, in the idea there is a natural equity that the land shall stand charged with the unpaid purchase money. This implied lien has sometimes been described as a kind of equitable mortgage, inherent in the contract of sale; sometimes as a trust attaching to the estate, the vendee being regarded as a trustee for the unpaid purchase money. But whatever may have been the origin and nature of this implied lien, it was never considered as constituting an interest in the land conveyed, or as conferring upon the vendor anything beyond the mere right to charge the property with the payment of his debt.

The statute of 1849 provides that the vendor shall have no lien for unpaid purchase money, unless it be reserved on the face of the deed—thus abolishing the lien by implication of law, and substituting in its place a lien by express contract. This provision was not intended to impart any new quality to the vendor's lien, but to end the vexatious litigation growing out of his claims for the unpaid purchase money against *bona fide* purchasers of the legal title. In some instances this reserved lien is spoken of as an equitable mortgage, in others as equivalent to a mortgage. In others it is said the vendee's title is imperfect until the debt is paid. By all of which it is meant simply that the lien reserved on the face of the deed is as specific and quite as effectual as a security for the debt as a mortgage—that it is notice to all persons dealing with the estate, and that whoever takes the title takes it subject to the incumbrance of the lien. " The reservation of the vendor's lien in the deed of conveyance," says Mr. Justice Bradley, in *King* v. *Young Men's Association*, 1 Wood's R. 386, "is equal to a mortgage taken for the purchase money contemporaneously with the deed, and nothing more. The legal title passes to the purchaser, subject to the lien, and the land is liable to attachment and execution as his property as an equity of redemption." 1 Jones on Mortgages, §§ 229, 230.

The object and effect of the reservation are merely to hold the estate bound for the purchase money, to the exclusion of all other claims, whether on the part of creditors or purchasers, and not to create or to reserve a right of property in the land. Upon the death of the vendor, both, the debt and the lien, pass to his personal representatives, to be administered and accounted for as personal estate. When the debt is assigned to a third person, the assignment carries with it the lien, which is a mere incident to the debt. The lien is available as a security only, as it is connected, in some way, with the debt. Detached from it, it

is not a fit subject of assignment. 1 Hilliard on Mortgages, 216. The assignee stands in the shoes of the assignor, entitled to all his rights and remedies, but he is entitled to nothing more.

If the vendor has no right of property or interest in the estate conveyed, it is vain to say that his assignment to another can convey any such right or interest.

It is very true that in some of the States it has been held that the assignee of a mortgage debt is a purchaser within the meaning and policy of the recording acts. These decisions are, however, based upon special statutes, authorizing the registration of such assignments. These statutes do not treat the assignee as a purchaser of real estate, but as the assignee of a *chose* in action.

The object in recording the assignment is to protect the assignee against a subsequent sale of the mortgage by the apparent holder, as also to prevent a wrongful discharge of the mortgage by the mortgagee. In Virginia there are no laws requiring or authorizing the assignment of debts to be recorded, and such recordation, if made, would not constitute constructive notice to third persons. In any and every view that may be taken, it is clear that the appellant is not a purchaser of real estate or of any interest therein in any proper sense of the word.

Let us now inquire whether he is within the provisions of the several statutes requiring the docketing of judgments.

The history of these statutes will show that they were framed for the protection of *bona fide* purchasers of real estate claiming, under alienation by or through the judgment debtor, real estate which, under former laws, would have been subject to the lien of the judgment, even in the hands of alienees, for value without notice. For, under these laws, the lien of the judgment, deriving its efficacy from the *elegit*, extended to a moiety of the debtor's lands, whether

owned at the date of the judgment, or subsequently ac-quired; whether in the possession of the debtor himself or of *bona fide* purchasers from him.   The case of *Leake* v. *Ferguson,* 2 Gratt. 420, is a striking illustration of the harsh ope-ration of this rule.   In that case the purchaser had been in possession of the land for nearly fifteen years.   He had paid full value for it, and he had had no notice of any defect in the title.   And yet the lien of the judgment was enforced against him in favor of a party who might have been justly charged with having slept upon his rights.. Judge Allen said: " The lien of a judgment is a legal lien,. and the question of notice has no influence upon it.   The purchaser takes the legal title, subject to the legal lien, whether a purchaser with or without notice."   See also *Spindle* v. *Taylor,* 2 Gratt. 44; *Rogers* v. *M'Cluer's Adm'r,* 4 Gratt. 81.

The great hardship of these and like cases led, no doubt,. to the act of 1843, the first law ever passed in Virginia re-quiring the docketing of judgments.   See Acts of 1842–3,. p. —, revisal of 1849.

It was, however, not until the revisal of 1849 that the lien resulting from the *elegit* was abolished, and a lien given by statute upon the debtor's entire real estate.   This lien, con-ferred by the 6th section of chapter 182, C. V. 1873, is ab-solute and unconditional.   It is thus provided that every judgment for money thereafter rendered in this State against any person, shall be a lien upon all the real estate of or to which such person shall be possessed or entitled,. at or after the date of such judgment.

The only exception to, or limitation upon, this sweeping enactment, is found in the eighth section of the same chap-ter, which declares that no judgment shall be a lien on real estate as against a purchaser thereof without notice, unless it be docketed as directed.

It will thus be seen that the only persons protected by

this section is a purchaser of real estate, for value without notice, which would otherwise be subject to the lien of the judgment.   With respect to every other person, it is a matter of no sort of consequence whether the judgment be or be not docketed.   Inasmuch as the appellant is not within the operation of the eighth section, it does not concern him that the appellee's judgment was not duly docketed.   That judgment is a lien on the land in the hands of Bondurant, a purchaser with notice, and the appellant, as assignee of Bondurant's bonds, must take in subordination to the lien.

It has been said, however, that if the creditor may neglect for years to docket his judgment, no one can ever be safe in taking an assignment of bonds, however well secured by lien on real estate, and however apparently free from every defect affecting their value, for the assignee may, at any remote period, be surprised by a secret encumbrance, or some latent equity, of the existence of which he can have no notice.

This argument might be addressed to the legislature with more propriety than to the courts.   The statutes of registration do not profess, and were not designed, to guard against all the mischiefs which arise from conflicting titles. or successive alienations of property.   An undocketed judgment is good against subsequent creditors, with or without notice, and yet the subsequent creditor may have trusted the debtor upon the faith of his ownership of an apparenly unencumbered estate.

A deed of trust embracing *choses* in action is valid without recordation, and yet subsequent purchasers or assignees may be defrauded by the failure to record the deed.   *Kirkland, Chase & Co.* v. *Brune et als.,* 31 Gratt. 126.

The maxim of the common law as applied to personal property is *caveat emptor.*   A different rule prevails only with respect to negotiable instruments, the legal title to which passes by mere endorsement.   After the statute was

passed authorizing the assignee of common law obligations to sue in his own name, an effort was made to place these upon the same footing as bills of exchange and other negotiable securities. But the effort failed, and this court held in *Norton* v. *Rose*, 2 Wash. 233, that the statute was not intended to abridge the rights of the obligee, or to enlarge those of the assignee beyond that of suing in his own name.

It is not denied that an assignee cannot be affected by a latent equity in the hands of third person of which he has no notice. This was decided in *Moore* v. *Holcombe*, 3 Leigh, 597, in which it was held that the owner of land who sells and conveys without reserving a lien on the face of the deed, cannot set up his secret-implied lien against a subsequent *bona fide* assignment of bonds, who paid valuable consideration for the same.

This court said the secret-implied lien of the vendor was a mere creation of the equity courts, and could not be used to the injury of third persons who had been misled by the conduct of the original vendor. It was, in fact, a mere contest of equities. This, however, is not a controversy between the owners of different equitable rights or estates. In *Borst* v. *Nalle*, 28 Gratt. 430, and in *Price* v. *Thrash*, 30 Gratt, 515, it was held that the lien of a judgment is an express, absolute statutory lien on the debtor's real estate, and the right to resort to the courts to enforce it is a legal right without terms or conditions to be imposed. If as against the assignee of the purchase money bonds, the creditor is not required to docket his judgment, a failure to docket can raise no equity in behalf of such assignee. So far as he is concerned, the rights of the judgment creditor are precisely the same as they would be if the statute had never been passed requiring judgment to be docketed. In a contest between the *owners* of different legal estates or between the holders of different encumbrances, priority of

time is generally priority of right in the absence of modifications imposed by statutes of registration. You cannot take from a party a plain legal right or advantage, unless you can bring home to him fraud or other unfair conduct, or a gross neglect of some positive duty imposed by a plain rule of law.   2 Pomeroy E. J. 676.

This principle must govern in the present case, even though the appellant was clothed with the legal title. He, however, occupies no such ground; he has a mere equitable right. He is therefore not within the technical rule which protects the purchaser of real estate invested with the legal title, and he is therefore not in a condition to demand that the appellees shall be deprived of their lien to give effect to his purchase.

For these reasons, I think the decree of the circuit court is plainly right, and should be affirmed.

This disposes of all the questions arising between the appellant and the appellees. It is only necessary to consider briefly a matter of controversy between the appellees themselves. It appears that the appellee Patterson, being the owner of the bonds upon which the judgment in this case was recovered, transferred or assigned them in the year 1860 in payment, or part payment, of a tract of land lying in Culpeper, purchased by him from John H. Rixey, In the year 1870, Patterson sold a part of this tract to Peters, and it was desired that Rixey should unite in the conveyance. Rixey, however, declined to do so, unless he received in cash two thousand dollars of the purchase money. Thereupon Patterson turned over to Rixey, Peters' check for that sum, and Rixey reassigned to Patterson two thousand dollars of the bonds in question. In a written agreement between them it was stipulated that the check given by Peters was to be collected by Rixey, and held as collateral security for the payment of the bonds transferred by Patterson to Rixey—the $2,000, however, to be returned to Patterson

when said bonds are collected, and Patterson, in his answer, states that the reassignment of the bonds was in consideration of $2,000 in cash paid for the same.

Rixey, it is very certain, never returned the $2,000 to Patterson, for the plain reason that the former has never yet collected the bonds assigned to him by Patterson, and which gave rise to this controversy. The parties have, therefore, treated the reassignment of the bonds as absolute and unconditional. As the land fund will be insufficient to pay the whole amount of the judgment, a question is presented, Who is first to be paid, Patterson or Rixey?

Counsel for Patterson insist that the bonds assigned by him to Rixey were received as so much cash, and without any right to recourse upon the assignee. There is nothing, however, in the record to sustain this view, nor, indeed, to rebut the presumption arising upon an assignment for value, that the assignor is liable to the assignee if by the exercise of due diligence the money is not collected from the obligor.

The fact that Rixey would not unite in the deed to Peters unless he received the $2,000, and that he was only to return it when he succeeded in collecting all the bonds assigned to him by Patterson, tends to show that Rixey did not accept these bonds as so much cash, without any right of resort to the assignor.

If the court should decree to Patterson priority of payment of the $2,000, with its interest, and the land fund should prove insufficient to discharge the amount due Rixey upon the bonds retained by him, the latter would have a right of recovery against Patterson upon the original assignment. Instead of turning Rixey around to an independent suit against Patterson for the deficiency, the court, having all the parties before it, will place the responsibility where it properly belongs, and give to the assignee the benefit of every security justly arising from the assignment; for,

whether he assigned only a part of the bonds originally, or the whole, and took a reassignment of part, he must make good the assignment out of the land fund, or out of his private means.

It seem to me, therefore, the decision of the circuit court upon this point of the case is also correct, and must be affirmed.

DECREE AFFIRMED.