# Richmond.

## STEBBINS & LAWSON v. BRUCE.

### APRIL 9th, 1885.

1. ASSIGNOR AND ASSIGNEE—*Equities.*—It is settled law in this state that assignee of non-negotiable paper stands in the shoes of his assignor, and takes subject to all defences of debtor against assignor existing before notice of assignment.  Code 1873, ch. 141, sec. 17.

2. IDEM—*Estoppel—Silence.*—Where after notice of assignment, debtor expressly or impliedly promises to pay the debt, he is estopped from setting up any defence he had against assignor. *Feazle* v. *Dillard,* 5 Leigh, 30.  Mere silence will not operate such estoppel.

3. IDEM—*Notice—Effect.*—Legal effect of notice of assignment is not to make debtor disclose his defences, but to preclude him from setting up defences after acquired against assignor. *Gordon* v. *Rixey,* 76 Va. 694.

4. IDEM—*Subsequent promise—Conflict of evidence.*—Where by letter assignee notifies debtor of assignment, and latter answers that assignor was heavily indebted to him and that he ought to have credit therefor, and it does not appear that assignee was induced to alter his position by the answer, and the testimony is conflicting, and the jury finds for the debtor, the verdict will not be disturbed.

Error to judgment of circuit court of Halifax county, rendered April 7th, 1882, in an action of debt wherein Stebbins & Lawson, assignees of Thomas Bruce, were plaintiffs, and Alexander Bruce was defendant.  The action was founded on a bond dated January 9th, 1878, executed by the defendant, for $1,500, payable two years after its date, to Thomas Bruce, and by him assigned, 17th January, 1878, to the plaintiffs, for a certain sum, part paid in cash and for balance note given at four months.  By transactions between Thomas and Alexander

Bruce, on 10th February, 1878, the liability on the bond ceased, though it was not surrendered or demanded. The assignees notified the obligor of the assignment on 14th February, and the latter made no reply. They then paid the note, and in January, 1879, again wrote to Alexander Bruce about the bond, when he replied: "Thomas Bruce is heavily indebted to me, and I ought to be entitled to a credit on the note to the amount of his indebtedness to me." To the action on the bond Alexander Bruce set up offsets acquired by him against Thomas Bruce before notice of the assignment. There was much conflict of testimony. There were three trials. At two the juries failed to agree. At the third the jury rendered their verdict for the defendant. This verdict the plaintiffs moved to set aside. The court overruled the motion, and entered judgment in accordance with the verdict; and the plaintiffs were awarded a writ of error.

*Wood Bouldin, Jr.*, and *W. W. Henry*, for the plaintiffs in error.

This case comes up on a certificate of the facts proved at the trial before a jury, and exceptions to the rulings of the court below on the law applicable to such facts.

No rule of law which forbids a court to interfere where a jury has weighed conflicting evidence can possibly apply. The simple question is, Did the court below err as to the law applicable to the facts certified and just inferences therefrom? *Slaughter* v. *Tutt*, 12 L. 147.

The first ground of error assigned was the refusal of the court to give the instruction asked for by the plaintiffs in these words: "If the jury shall believe from the evidence that the bond sued on in this case was assigned to the plaintiffs on the 17th of January, 1878, by Thomas Bruce, to whom it is payable, and that part of the consideration of said assignment was a note of the plaintiffs to Thomas Bruce, payable at four months

from that date, and that the defendant was notified by the plaintiffs of the said assignment by a letter dated the 14th of February, 1878, and received by defendant on that day, or the next day, and that the defendant did not inform the plaintiffs of any failure in the consideration of the said bond, and did not inform the plaintiffs of any claim of offset whatever until the 10th January, 1879, and then claimed that the said Thomas Bruce was heavily indebted to him; which said indebtedness should be credited on the said bond. And if the jury shall further believe from the evidence that the plaintiffs were induced by the said silence of the defendant to pay their said note given in part consideration of the said assignment, and that the said Thomas Bruce, on the said 10th January, 1879, was greatly embarrassed, if not insolvent, and is now insolvent, then the jury should consider that the said conduct of the defendant has deprived him of the right to rely on the matters set forth in his said pleas as a defence to this suit, and they must find for the plaintiffs."

The court added the words, "to the amount so paid"; thus restricting the recovery to the amount of the note given by the plaintiffs on the purchase of said bond, and subsequently paid by them, and gave the instruction with this restriction.

The learned counsel for the appellee claim that the instruction given was "logical" and that refused was "illogical." The error of the learned judge below, thus attempted to be sustained here, consists in an entire misapprehension of the rule of law embodied in the instruction asked for. The rule of law evoked by the plaintiffs is that known as *estoppel in pais*, and is expressed by Lord Coke (Co. Lit. 252*a*), in these words: "Estoppel cometh of the French word *estoupe*, from whence the English word stopped; and it is called an estoppel or conclusion, because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth."

Lord Wensleydale states the rule thus: "If any person, by a course of conduct, or by actual expressions, so conducts himself that another may reasonably infer the existence of an agree-

ment or license, whether the party intend that he should do so or not, it has the effect, that the party using that language, or who has so conducted himself, cannot afterwards gainsay the reasonable inference to be drawn from his words or conduct." *Cornish* v. *Abington*, 4 H. & N. (Excheq.) 555. Baron Bramwell, in the same case, says: "The rule is, that if a man so conducts himself, whether intentionally or not, that a reasonable person would infer that a certain state of things exists, and acts on that inference, he shall afterwards be estopped from denying it." The Supreme Court of the United States has stated the rule both for courts of equity and law in these words: "What I induce my neighbor to regard as true, is the truth as between us, if he has been misled by my asseveration." *Keik* v. *Hamilton*, 102 U. S. 76. And in *Dickinson* v. *Colgrove*, 100 U. S. 580, that court said: "The vital principle is, that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. It involves fraud and falsehood, and the law abhors both."

If the obligor had been informed of the intended purchase of his bond before it had been assigned, and had concealed his defence, it will not be contended that he could afterwards set up such defence against the assignee. And this would be true although the assignee may have given less than the face value of the bond on its purchase, and although the assignor may be solvent, and thus the assignee be in no danger of finally losing any part of the money paid out. In such a case, if the *logic* of the learned counsel for the appellee is to prevail, the plaintiff, assignee, can only recover the amount he may have been damaged, which may be nothing. But the law is well established that the plaintiff recovers the entire amount of the obligation. *Davis* v. *Thomas*, 5 Leigh, 1.

The same rule obtains when the obligor is informed of the assignment after it has been made, and so acts as to estop him-

self from defending his bond, for the estoppel is the same in both cases and is based on the same equitable grounds.

*Feazle* v. *Dillard*, 5 L. 36; *Scott* v. *Jones*, 1 Brock. 247; Waterman on Setoff, 636–7.

The same rule applies to an account rendered and not objected to. *Towns* v. *Birchett*, 12 L. 193.

The judge certifies that it was proved that "on the 17th January, 1878, Thomas Bruce sold and assigned to the plaintiffs the said bond of $1,500 for the sum of $1041.54, which was paid as follows, to-wit: They let him have a horse valued at $150, receipted an old account he owed them for $83, gave him their note at four months for $308.54, and paid him $500 in money." "On the 14th February, 1878, * * Alexander Bruce received from the plaintiffs a letter in regard to the said bond for $1,500, informing him that his said bond had been assigned to them by Thomas Bruce." "The defendant made no reply in writing to the said letter, and nothing passed between him and the plaintiffs in regard to the matter until about the time the bond of Alex. Bruce to Thomas Bruce for $300 fell due"—19th January, 1879. "In January, 1879, the plaintiffs wrote a second letter to the defendant about the said bond of $1,500 assigned to them by Thomas Bruce, and received from the defendant a letter," the substance of which is given hereinafter. "It was further proved that the plaintiffs paid, when it became due, their said note of $308.54, given to Thos. Bruce in part payment of the purchase money for the $1,500 bond, and one of them testified that they did so believing that the $1,500 would be paid at maturity by Bruce," the obligor. [The note being given 17th January, 1878, payable four months after date, fell due and was paid 17th May, 1878, more than three months after the notice of the assignment sent the defendant.] "It was also proved that Thomas Bruce was insolvent * * in January, 1878, * * and had been so ever since."

It is thus seen that every fact grouped in the instruction ask-

ed, was certified to have been distinctly proven, except the fact "that the plaintiffs were induced by the said silence of the defendant (after receiving notice of the assignment) to pay their said note given in part consideration for the said assignment." This fact is an irresistible conclusion from the facts proven, and therefore must be considered by this court as proved. *Gov'r for Fisher* v. *Vanmeter*, 9 L. 18; *Slaughter* v. *Tutt*, 12 L. 147; which are leading cases on this point.

Here the circumstances proved are the assignment by an insolvent of a bond, a part of the consideration being a four months' note of the assignees, payable to the assignor—a notice of the assignment to the obligor three months before said note fell due—the continued silence of the obligor, producing the impression on the assignees that the assigned bond would be paid at maturity, and while under that impression, the payment by the assignees of the said note given to the assignor. Now, as the assignees, on information of the obligor of a defence would have had a right to decline paying their note to the assignor, which would have been their natural protection against complete loss for the consideration given the insolvent assignor, the conclusion cannot be avoided that the silence of the obligor as to any defence was the *inducement* which caused the plaintiffs to pay their note, and thus give up their protection *pro tanto* against loss. Such a conclusion is consonant with the actions of men in their usual conduct of business, and must be drawn, in the absence of all conflicting evidence, as is the case here. Greenleaf on Evid., sec. 38.

It thus appears that every fact going to make up the conclusion of law contained in the instruction asked, and given in a modified form, was established by the proof; and therefore the jury found contrary to the law and facts in finding for the defendant.

But in another view, the verdict of the jury was plainly against the law and facts. On the 10th January, 1879, nearly a year after the happening of the matters which the appellee

claims made null and void his bond, and which were .fully known to him, the appellee, in response to a second letter from the appellants, calling his attention to the assignment to them of his obligation, wrote as follows:

"With regard to the note you refer to, Thomas Bruce is heavily indebted to me, and I ought to be entitled to a credit upon the note to the amount of his indebtedness to me."

This was a distinct admission by the appellee of the validity of the said bond, and an acknowledgment of his obligation to pay it to the assignees, with a claim to a right to offset so much of it as might be covered by the indebtedness of Thomas Bruce to him. An admission of a debt is in law a promise to pay it. And, therefore, the legal effect of this letter is a promise in writing to pay his obligation held by the appellants, except so far as he had a right to offset it by the debt of Thomas Bruce to him. Story on Contracts, sec. 707. On getting this letter the appellants were induced to believe that all they need concern themselves about was the claim to offsets, and so they took no steps to protect themselves against an entire failure of consideration. That they took steps to protect themselves against the offsets may be inferred from the fact of Thomas Bruce going to the appellee and offering to secure them.

The rule applicable to such a promise was clearly expressed in *Cleaton* v. *Chambliss*, 6 Ran. 90, as follows: "Any damage or any suspension or forbearance of his right, or any possibility of a loss occasioned to the plaintiff by the promise of another, is sufficient consideration for such promise, and will make it binding, although no actual benefit accrues to the party undertaking." The court to sustain this statement cites, among others, the leading case of *Pillans & Rose* v. *Van Meirop & Hopkins*, 3 Burr, 1663, decided by the Court of King's Bench, Mansfield presiding. That case is strong authority for the appellants. There the plaintiffs paid a draft of White, who promised to reimburse them by a credit on the defendants. After paying White's draft, the plaintiffs wrote to the defendants ask-

ing whether they would accept their draft upon the credit of White, and received a reply that they would. But White failing, and having nothing in the hands of the defendants, the draft of the plaintiffs on them was dishonored. The defence relied on was *nudum pactum*, but the whole court held the defendants liable. Justice Wilmot said, "The mere promise to pay the debt of another, without any consideration at all, is *nudum pactum*, but the *least spark* of a consideration will be sufficient. The plaintiffs by this undertaking (of the defendants), and relying on it, were deluded and diverted from using any legal diligence to pursue White, or even to part with any effects of his which they might have in their hands. Therefore, this seems to be an irrevocable undertaking by the defendants." Justice Yates said, "The promise and undertaking of the defendants did occasion possibility of loss to plaintiffs. They were, or might have been, prevented from resorting to White, or getting further security from him."

The same reasoning is conclusive of the case at bar. Here the appellants could at once have taken steps to secure themselves with Thomas Bruce, their assignor, if warned of a defence of failure of consideration by the appellee. It is no reply to say that Thomas Bruce was then insolvent. He was in possession of large property.

He felt able to secure the appellee in every respect, and offered to do so. It is evident, therefore, that the admission by the appellee of the validity of the assigned bond, both by his silence after the first notice and by his letter after the second, occasioned not only a possibility of, but an actual loss to the appellants. And this was sufficient to sustain the promise to pay contained in said letter.

It is submitted that the judgment below should be reversed and the case sent back for a new trial on proper instructions.

*Carrington & Fitzhugh* and *J. W. Riely*, for the defendant in error.

LEWIS, P., delivered the opinion of the court.

It is the settled law of this state that the assignee of any bond, note or writing, not negotiable, stands in the shoes of the assignor; or, in other words, the assignment is subject to all the equities of the debtor against the assignor until notice of the assignment. Code 1873, ch. 141, sec. 17; *Norton* v. *Rose*, 2 Wash. 233; *Feazle* v. *Dillard*, 5 Leigh, 30; *Etheridge* v. *Parker*, 76 Va. 247. When, however, after notice of the assignment, the debtor promises the assignee to pay the debt, or by his conduct induces him to believe that he will, under such circumstances as that a retraction of the promise, if permitted, would operate as a fraud upon the assignee, the former is thereby estopped from afterwards setting up any defence which he may have had against the assignor. Thus, where after the assignment of a bond, the obligor, the assignor and the assignee all met together and agreed upon the credits to which the obligor was entitled, it was held that the bond was not subject to any set-off not embraced in such settlement. *Feazle* v. *Dillard*, *supra*. So, where the maker of a note, upon being informed of the assignment, replied that "he would see about that," and said nothing about any set-off against the assignor, it was held that he thereby waived the right to take advantage of the set-off which he afterwards sought to set up. *Albee* v. *Little*, 5 N. H. 277. So, it has been held that where the debtor gives his note for the amount of the debt to the assignee, and afterwards pays notes on which he was liable as surety, and the assignor is principle, he cannot, in an action on the note, set off such payments. Waterman on Set-off, see 589 *et seq.*

These decisions rest on the principle that a man is estopped on grounds of public policy and good faith from denying what by his conduct or representations he has induced others to act upon as true; or, in the language of Lord Coke, "a man's own act or acceptance stoppeth or closeth up his mouth to allege or

plead the truth." And, on the same principle, it is contended by the plaintiff in error, that a like estoppel arises from the mere silence of the debtor when notified of the assignment; and in support of this position, reference is made to the case of *Scott* v. *Jones*, 1 Brock. 244. In that case, it is true, Chief Justice Marshall, in the course of his opinion, said: "The obligor in an assigned bond who has equitable discounts against it, ought to inform the assignee of his claims when notice of the assignment is given to him. In fair dealing he is bound to do this, that the assignee may take measures to secure himself against the assignor." But the case was decided on another ground, and the doctrine thus broadly asserted would seem to be in conflict with the decision of the Supreme Court of the United States in *Stewart* v. *Anderson*, 6 Cranch, 203. In that case an action was brought, under the statute of Virginia, by the indorsers of a promissory note against the maker, after notice of the transfer. When informed of the transfer the latter made no reply. At the trial the defendant pleaded an offset, which was a note executed to him by the assignor, but which was not due at the time of the assignment of the note sued upon, but became due and payable before the maturity of that note. The right to set up the offset was controverted by the plaintiff, but was sustained by the court.

In the present case, as in that, the defendant, when he received notice of the assignment, made no reply. It appears that the assignment was made on the 17th of January, 1878, and that notice thereof was not given until the 14th of the following month, though the parties lived in the same neighborhood. In the meantime, the liability of the defendant to the assignor had been released; and it seems somewhat remarkable that he did not at the time demand the surrender of the bond. But be that as it may, it is conceded that there was no cause of action against the defendant by the assignor at the time of the formal notice of the assignment, and that the plaintiffs took

subject to all the defendant's equities against the assignor until knowledge of the assignment was acquired by the defendant.

The question then is, whether by reason of the latter's silence, when notified of the assignment, the plaintiffs now occupy a better position than did the assignor at that time? In determining this question, it is to be remembered that by the ancient doctrine of the common law, a *chose in action* was not assignable, the reason being, according to Lord Coke, that such assignments, if admitted, "would be the occasion of multiplying of contentions and suits, of great oppression of the people, and chiefly of the terre-tenants, and the subversion of the due and equal execution of justice." Afterwards, however, courts of equity upheld assignments made in satisfaction of a precedent debt, and at a still later period all assignments on a good consideration. And the common law courts, following their example, took notice of the equitable rights of the assignee, when suit was brought for his benefit in the name of the assignor. In 1705 a statute was passed in Virginia authorizing the assignment of "any bond or bill for debt," and giving to the assignee the right to sue in his own name; but with the proviso that the defendant should be allowed all discounts that he could prove, either against the plaintiff or the first obligor. By subsequent statute these provisions were extended to promissory notes and to all writings obligatory whatever; and it was further enacted that all just discounts should be allowed the defendant, not only against the plaintiff, but against the assignor before notice of assignment. Green, J., in *Garland* v. *Richeson*, 4 Rand. 266; 2 Rob. Pr. (new ed.), 260, *et seq.* And such substantially is the statute as it now stands in the Code, chapter 141, section 17, which enacts as follows: "The assignee of any bond, note or writing, not negotiable, may maintain thereupon any action in his own name which the original obligee or payee might have brought, but shall allow all just discounts, not only against himself, but against the assignor, before the defendant had notice of the assignment."

It will thus be seen that while originally no rights were ac-
quired by an assignment of a *chose in action,* the rights of the
assignee came in course of time to be recognized by the courts,
and afterwards by statute, which at first made them subject to
all the equities of the defendant, whether he had notice of the
assignment or not, and now only to such defences as he may
have had before notice of the assignment.

It has been repeatedly held that the statute did not intend to
abridge the rights of the obligor, nor to enlarge those of the
assignee beyond that of suing in his own name (*Gordon* v. *Rixey,*
76 Va. 694; *Feazle* v. *Dillard, supra*), and it is plain, we think,
from what has been said, that the legal effect of notice to the
obligor is not to oblige him to disclose to the assignee the de-
fences he may have (for to do so might often be impracticable
and even impossible at the time of receiving notice); but to pre-
clude him from setting up any additional defence he may there-
after acquire against the assignor.

In the *Bank of Washington* v. *Arthur,* 3 Gratt. 165, it was
held, that notwithstanding the obligor, in a bond tainted with
usury, had acknowledged the debt, after notice of the as-
signment, and promised the assignee to pay it, he was not
thereby estopped from afterwards setting up the defence of
usury.   And this was so, said the court, because, first, the pro-
mise to pay the assignee could not be treated as a new contract,
the same being without a valuable consideration; and, secondly,
because, under the circumstances of the case, the assertion of
the defence could not operate as a fraud upon the assignee, in-
asmuch as the representations of the obligor were not made
with fraudulent intent, and no loss was occasioned thereby
to the assignee.   The case was therefore unlike the case of
*Pettit* v. *Jennings,* 2 Rob. Rep. 676, in which it was held, that
where the assignee is induced to take the assignment of the
debt by the assurances of the debtor that the same is just, and
will be duly paid, the latter is estopped from setting up any de-
fence he may have against the assignor, even though the debt

be for a gaming consideration, and therefore void in its inception, provided the assignee before he accepted the assignment had no knowledge as to the consideration of the instrument assigned.

"The assignee," says Prof. Minor, "taking, as he does in general, only an *equitable* interest, takes it ordinarily subject to all the equities which the debtor has, or may acquire, against the assignor before he has notice of the assignment, or as it is sometimes expressed, the assignee cannot be in a better condition than the assignor. Nor does it affect the application of this principle that the assignment is for value, and without notice, nor that *after* assignment the debtor acknowledged the demand to be just. * * * But whilst no acknowledgment made *after* assignment will preclude the debtor from proving, if he can, any equity against the assignor, acquired before he had notice of the assignment, he will be estopped from setting up any equity or defence, however well founded originally, if by his assurance *made beforehand* he has *induced the assignee* to acquire the debt." 2 Minor's Insts. 326. This, we think, is a correct statement of the law, subject to the qualification already adverted to, namely, that where, after notice of the assignment, the debtor expressly or impliedly promises the assignee to pay the debt, he will be concluded thereby, if the retraction of such promise would operate as a fraud upon the assignee. As where, relying on the debtor's promise or admissions, the assignee takes no steps against, or to obtain additional security of, the assignor, who afterwards becomes insolvent, in consequence of which loss is sustained by the assignee. In this and other like cases where the assignee has been influenced to act, or to refrain from taking action, by the representations of the debtor, to permit the latter to repudiate those representations to the injury of the former, would be contrary, no less to the well-settled rule of the common law, than to the plainest principles of natural justice. And the same principle prevails in

·equity.    1 Greenleaf on Evid. sec 207 *et seq.*; *Pettit* v. *Jennings*, *supra*, 2 Pom. Eq. sec. 812.

It is insisted, however, that prior to the notice of the assignment, and before the release of the defendant's liability to Thomas Bruce, the assignor, the defendant knew of the assignment to the plaintiffs, and consequently could not·escape liability to the latter by anything that thereafter occurred.    It appears from the certificate of facts that " it was proved" that on the 19th day of January, 1878, or two days after the assignment to the plaintiffs of the bond in question, the defendant, in a conversation with the obligee, said: " You have sold my bond to Stebbins & Lawson," and that he did not deny it. "But," the certificate continues, " the said Alexander Bruce (the defendant) denied that such conversation occurred."    It is obvious that while the certificate purports to be a certificate of facts proved, it is in some particulars a certificate of the evidence only, and that here it must be construed as certifying merely that *it was given in evidence* that such a conversation occurred, and that the defendant denied that it did.    This view is strengthened by the fact that the jury found for the defendant, after an instruction by the·court, that if they believed from the evidence that at the time the liability of the defendant to the assignor was released, the former knew of the assignment, they must find for the plaintiffs, whether such knowledge was derived from the plaintiffs or from other sources.

The plaintiffs also rely on a letter addressed to them by the defendant nearly twelve months after the assignment of the bond, in reply to a letter from them, in which he claimed that the assignor was heavily indebted to him, and that he ought to be allowed credit for such indebtedness.    This, it is insisted, was equivalent to a distinct promise to pay the debt, subject to credits when ascertained.    But the jury, in the light of all the facts, found otherwise, and we see no reason to disturb the verdict.    It does not appear that the plaintiffs were induced by the

letter to alter their position, or that they have in any way been prejudiced thereby. Their note to the assignor, executed as part consideration for the assignment of the bond, had been paid, and the record shows that the assignor was not only insolvent at the time of the assignment, but has since continued so. The judgment is affirmed.

JUDGMENT AFFIRMED.